IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

AIDA FERRER-FERRER,

Plaintiff,

v.                                                          CIVIL NO. 11-1663 (CVR)

BERMUDEZ, LONGO, DIAZ-MASSO,
S.E., et al.

Defendants.

**OPINION AND ORDER**

**I.  INTRODUCTION**

Plaintiff Aida Ferrer-Ferrer ("Plaintiff" or "Ferrer") filed this lawsuit against her former employer, Defendant Bermúdez, Longo, Díaz-Massó, LLC ("BLDM"), claiming her employment with BLDM was terminated because of her age in violation of the Age Discrimination in Employment Act ("A.D.E.A."), 29 U.S.C. § 621 *et seq.* The complaint also asserts an employment discrimination case under the Puerto Rico Anti-Discrimination Act, Law 100, P.R. Laws Ann. tit. 29 §§ 146-151, an unjustified dismissal claim under Puerto Rico Law 80, P.R. Laws Ann. tit. 29 § 185a-m, and a general tort claim under articles 1802 and 1803 of the Puerto Rico Civil Code, P.R. Laws. Ann. tit. 29 §§ 5141-5142. (Docket No. 17).

On June 24, 2013, BLDM requested that summary judgment be entered as a matter of law as (i) the allegations in the complaint are admittedly false, are in no sense discriminatory or demonstrative that age was the motivating fact for which Plaintiff Ferrer no longer works at BLDM; (ii) Plaintiff's evidence falls short from establishing a *prima facie*

case of discrimination; and (iii) even if a prima facie is established, there is an absence of evidence to support Plaintiff's claim of discrimination. (Docket No. 43).[1]

On August 12, 2013, Plaintiff opposed BLDM's request (Docket No. 54) and also filed a statement of additional facts in support of her opposition.[2] (Docket No. 56).   On September 5, 2013, BLDM filed its reply. (Docket No. 67).

For the reasons stated below, and upon careful consideration of the parties' submissions and applicable law, BLDM's Motion for Summary Judgment is **GRANTED**.

## II.   STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  Pursuant to the language of the rule, the moving party bears the two-fold burden of showing that there is "no genuine issue as to any material facts," and that he is "entitled to judgment as a matter of law."  Vega-Rodríguez v. Puerto Rico Tel. Co., 110 F.3d 174, 178 (1st Cir. 1997).

After the moving party has satisfied this burden, the onus shifts to the resisting party to show that there still exists "a trial worthy issue as to some material fact."  Cortés-Irizarry v. Corporación Insular, 111 F.3d 184, 187 (1st Cir. 1997).  A fact is deemed "material" if it potentially could affect the outcome of the suit.  Id.  Moreover, there will only be a

---

[1] BLDM  further submitted a revised version of page 2 of the Statement of Uncontested Material Facts including a footnote in paragraph 10. (Docket No. 46). Defendant filed certified English translation of the supporting exhibits in Docket Nos. 50 and 69.

[2] Plaintiff filed certified English translation of the supporting exhibits in Docket No. 73.

"genuine" or "trial worthy" issue as to such a "material fact," "if a reasonable fact-finder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor."  Id.

At all times during the consideration of a motion for summary judgment, the Court must examine the entire record "in the light most flattering to the non-movant and indulge all reasonable inferences in the party's favor." Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994).  There is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, [and] no room for the judge to superimpose his own ideas of probability and likelihood . . . ." Greenburg v. Puerto Rico Mar. Shipping Auth., 835 F.2d 932, 936 (1st Cir. 1987).  In fact, "[o]nly if the record, viewed in [this] manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment." Cadle Co. v. Hayes, 116 F.3d 957, 960 (1st Cir. 1997).

The First Circuit Court of Appeals has "emphasized the importance of local rules similar to Local Rule 56 [of the District of Puerto Rico]." Hernández v. Philip Morris USA, Inc., 486 F.3d 1, 7 (1st Cir.2007); see also, Colón v. Infotech Aerospace Services, Inc., 869 F.Supp.2d 220, 225-226 (D.P.R. 2012).   Rules such as Local Rule 56 "are designed to function as a means of 'focusing a district court's attention on what is—and what is not—genuinely controverted.' " Hernández, 869 F.Supp.2d at 7 (quoting Calvi v. Knox County, 470 F.3d 422, 427 (1st Cir.2006)). Local Rule 56 imposes guidelines for both the movant and the party opposing summary judgment.  A party moving for summary judgment must submit factual assertions in "a separate, short, and concise statement of

material facts, set forth in numbered paragraphs." Loc. Rule 56(b). A party opposing a motion for summary judgment must "admit, deny, or qualify the facts supporting the motion for summary judgment by reference to each numbered paragraph of the moving party's statement of facts." Loc. Rule 56(c). Facts which are properly supported "shall be deemed admitted unless properly controverted." Loc. Rule 56(e); P.R. Am. Ins. Co. v. Rivera-Vázquez, 603 F.3d 125, 130 (1st Cir.2010) and Colón, 869 F.Supp.2d at 226. Due to the importance of this function to the summary judgment process, "litigants ignore [those rules] at their peril." Hernández, 486 F.3d at 7.

### III.   FACTUAL BACKGROUND[3]

BLDM is a Limited Liability Company, pursuant to Puerto Rico law dedicated to mechanical and electrical engineering contracting. See, Docket No. 43, BLDM's Statement of Material Uncontested Facts  ("SMUF") at ¶ 1 and Docket No. 55, Plaintiff's Opposing Statement of Material Facts[4] ("OSMF") (Docket No. 56) at ¶ 1.

Engineer Adriel Longo ("Longo") was a founding partner of BLDM. SUMF ¶ 2 and PCS ¶ 2.

---

[3] The record in this case confirms that Plaintiff and BLDM agree on most of the facts. More specifically, the following uncontested facts were admitted by Plaintiff: 1-7, 12-27, 31-66, 36-44, 46-53, 57, 62 and 64. The following facts were admitted by Plaintiff, but a remark was added after its admittance: 20, 40, 41, 43, 46, 47, 48, 57 and 62.

[4] Erroneously titled Plaintiff's Statement of Facts. In fact, Plaintiff's response is poorly written and offers lots of unsupported statements of facts and conclusions. Therefore, and as will be discussed in detail below, the Court refuses "to do counsel's work, create the ossature for the argument, and put flesh on its bones . . . Judges are not expected to be mind-readers." U.S. v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990); see also Ramírez-Lluveras v. Pagán-Cruz, 919 F.Supp. 2d 214, n. 6 (D.P.R. 2013)

Aida Ferrer-Ferrer v. Bermudez, Longo, Díaz-Masso, S.E., et al
Civil No. 11-1663 (CVR)
Opinion and Order
Page 5

_____

Plaintiff worked for BLDM from March 1, 1972 to December 22, 2010.  SUMF at ¶ 2 and PCS at ¶ 2.[5]  When Plaintiff stopped working for BLDM, she was not the most senior employee at the Company.[6]  SUMF at ¶ 34and OSMF at ¶ 34.

BLDM's Finance Department has seven divisions, to wit: Accounts Payable, Insurance, General Accounting, Accounts Receivable, Cost, Payroll and Human Resources. SUMF at ¶ 4 and OSMF at ¶ 4.

At all times relevant to the complaint, the Human Resources and the Payroll divisions were both part of the Finance Department.  Mrs. Yvonne Alvarado worked as a Manager of Human Resources for BLDM and was in charge of supervising both divisions. Mrs. Emilia Parilla was Mrs. Alvarado's assistant in both divisions. SUMF at ¶¶ 5-7 and OSMF at ¶¶ 5-7.

Mrs. Lourdes Rivera worked as Payroll Clerk ("Oficial de Nómina") and Human Resources Officer. SUMF at ¶ 8.[7]  She holds a Master's Degree in Business Administration with a major in Human Resources from the Interamerican University. SUMF ¶ 39.

Mrs. Michelly Hernández started working at BLDM around 2004.  She obtained a Master's Degree in Business Administration from Turabo University in 2006.  She was appointed to the position of Payroll Supervisor in 2009 or 2010. Prior to said appointment

_____

[5]Although Plaintiff filed a Statement of Additional Facts, most - if not all - of the statements included therein are either repetitive or  included as part of her Opposing Statement.  Paragraph 2 of SUMF is one example. See, Plaintiff's Statement of Additional Facts at ¶ 1. Moreover, a significant amount of those statements are not adequately supported.

[6] Plaintiff denied this uncontested fact alleging that she was the oldest person working at the company.  BLDM's statement, however, states that she was not the most senior employee at BLDM. As BLDM further explains, this term does not refer to age but to the years of service at BLDM.  Therefore, this statement was not contested by Plaintiff. Moreover, Plaintiff admitted in her deposition that she was not the most senior employee at BLDM. (Docket No. 43, Exh. 7, p. 77:10-17).

[7] Although Plaintiff denied this statement by referring to her testimony during the deposition, the supporting excerpts do not support Plaintiff's denial.  As such, the court deems this an uncontested fact.

Aida Ferrer-Ferrer v. Bermudez, Longo, Díaz-Masso, S.E., et al
Civil No. 11-1663 (CVR)
Opinion and Order
Page 6

_____

and at times relevant to the complaint, she worked as a Group Leader of the Payroll

Division. SUMF ¶¶ 9 and 38.[8]

 Due to cut backs done at times relevant to the complaint, starting in 2008, the duties

of both the Payroll and the Human Resources divisions were performed by the same

employees. Consequently, Parrilla, Hernández and Rivera would perform the duties of

Payroll and Human Resources. SUMF ¶ 13.

 As result of Hernández' promotion in 2012, her supervisory duties were added to

Parrilla who at all times relevant to the complaint was Alvarado's assistant at both the

Payroll and Human Resources divisions. SUMF ¶ 14. The company also hired Mrs. Saieli

Lara in August of 2012 to perform Hernández' payroll duties after her promotion. SUMF

¶ 15.  Lara currently works two (2) days in Payroll (Mondays and Tuesdays) and the rest

of the week she works in the Cost Division. SUMF ¶ 16.

 In July of 2008, Ferrer was assigned to the position of first floor desk. SUMF ¶ 17.

The only duty performed by Ferrer before being transferred to the first floor front desk that

Hernández did not perform was making certifications.  SUMF ¶ 18. In fact, Hernández was

performing these duties even before Ferrer was moved to the first floor front desk.

Hernández also performed some other duties as assigned by Alvarado. SUMF ¶ 19.  As

stated in Plaintiff's Evaluation form, starting in 2008, new responsibilities were assigned

to Ferrer in the first floor desk area.  (Docket No. 43, Exh. 10, p. 4).

 There are two front desks at BLDM offices; one on the first floor and another on the

second floor.  BLDM's reception is located on the second floor. Thus, the usual duties of a

_____

[8]Plaintiff admitted this fact but required that a specific date of Hernández' appointment be provided so that this
date be established with certainty. For the reasons stated below, the exact date of Hernández' appointment is irrelevant.

receptionist are conducted on the second floor. The person assigned to the first floor desk did not perform the duties of a receptionist (i.e. handling the telephone switchboard, greeting visitors, receiving correspondence, etc). Thus, while on the first floor front desk, Plaintiff was mainly handling checks to suppliers and providing information to BMLD's employees regarding their vacation balances with minimum computer interaction. SUMF ¶ 20.[9] Plaintiff admitted that once assigned to the first floor front desk, she did not perform any payroll work. SUMF ¶ 22.

At all times relevant, Ferrer was not the only employee providing information regarding employees' vacation balances within the Payroll or Human Resources Division. SUMF ¶ 21.

For many years, Ferrer was in charge of preparing the payroll certifications for the projects as required.   However, after the implementation of the software known as Timberline in 2006, those certifications were processed automatically. From the date Timberline was implemented until 2009, some information pertaining to the "Statement of Compliance" (which was attached to the certifications) was manually included by Ferrer. However, in 2009, Rivera implemented a "merged application" that "automatically entered the information onto the 'Statement of Compliance'". After that, Ferrer's sole responsibility

---

[9]Although Plaintiff admitted this statement, she alleges she performed other duties while in the first floor front desk, to wit: certifications, handling checks to suppliers and paycheck to employees. In support of her contention, Plaintiff refers to pages 61, 62-64 and 198-99 of her November 9, 2012 deposition transcript. A review of those portions of Ferrer's deposition does not support the additional chores allegedly performed by her.  In fact, Plaintiff's testimony pertains to her time as a Payroll clerk, not as a first floor front desk. The court notes, however, that Plaintiff's job description (including a list of the new chores assigned since 2008) was attached as Exhibit 10 of BLDM's Motion for Summary Judgment. (Docket Nos. 43).  A certified translation of this document was filed in Docket No. 69.

pertaining to the "Statement of Compliance" was to sign it. This responsibility was always shared with Parrilla (who also signed the statements). After Ferrer's departure, only Parrilla and Alvarado signed the certifications. SUMF ¶ 23.

Before 2009, approximately 100 certifications were issued per week. Since 2009, and after Timberline's implementation, only 20-25 certifications are issued per week. SUMF ¶ 24.

The first floor front desk position was eliminated in July of 2010. No other employee occupied said position. SUMF ¶ 25.

In 2006, Ferrer was absent a total of 42.32 days; in 2007, she was absent for 52.72 days; in 2008, she was absent for 84.25 working days; in 2009, she was absent for 161 days; and in 2010, for 81 days. SUMF ¶ 45. Plaintiff admitted that not all absences were charged to legal leave. (Docket No. 43, Exh. 6, Ferrer's Answers to BLDM's Requests for Admission numbers 7 and 8). This was further confirmed by BLDM's Human Resources Manager, Ms. Alvarado. (Docket No. 43, Exh. 4, p. 48). In fact, Plaintiff admitted she exhausted all leaves under state and federal laws. SUMF ¶ 44. Because of Plaintiff's attendance and punctuality problems, she was given an "inadequate" mark in her last performance evaluation in 2009.[10] SUMF ¶ 57. This performance evaluation form covered the time period between August 1, 2008 and August 1, 2009.

At times relevant, it was an essential requirement for an employee working with BLDM's payroll to be present consistently at work. Because of the number of employees working for BLDM, the process of reviewing and verifying the payroll data took and still

---

[10] See also Docket No. 43, Exh. 10, Evaluation Form, question number 5. The certified translation of this document was filed in Docket No. 69.

takes several days. The payroll needed to be processed with the highest degree of accuracy in order to avoid over or under paying employees and because the same information is used to make the payroll changes in the different projects, so that BLDM could seek the reimbursement from its clients . Ferrer's frequent and prolonged absences precluded her from working the payroll. If she continued working in the payroll after July of 2008, it would have caused an extreme disruption to BLDM's operations; particularly considering the attrition of both Payroll and Human Resources divisions which resulted in the cross-utilization of employees. SUMF ¶ 45.[11]

In 2008, BLDM terminated a total of 439 field employees and 24 office employees. In 2009, BLDM terminated a total of 499 field employees and 27 office employees, given the economic downturn that affected the construction industry. SUMF ¶ 46.

Plaintiff Ferrer was aware that, as part of a company-wide effort to address the dire economy affecting the construction industry and BMLD, the following measures were implemented by BLDM in 2010: a 10% reduction of car allowances, a 1 work-day reduction for all management personnel in the House, Electrical and Mechanics divisions and, a lay-off that affected more than 400 employees from the remaining divisions. SUMF ¶ 47.

As a result of the 2010 restructuring process, the only employees who remained at the Human Resources and Payroll divisions were Alvarado (manager of both divisions), Parilla (Alvarado's Assistant), Hernández (Payroll Supervisor), and Rivera. All of them had to perform the duties pertaining to both divisions. SUMF ¶ 48

---

[11]Plaintiff denies this statement because "she did not have an absenteeism problem" and because her absences were protected by SINOT. This statement is belied by Plaintiff's own admissions. See discussion regarding SUMF ¶¶ 44-45.

Aida Ferrer-Ferrer v. Bermudez, Longo, Díaz-Masso, S.E., et al
Civil No. 11-1663 (CVR)
Opinion and Order
Page 10

Ferrer did not posses the preparation and knowledge to work in the accounting division. SUMF ¶ 49.

It is uncontested that Ferrer did not possess the preparation and human resources knowledge to successfully work in said department. As further admitted in her deposition, she did not have knowledge in this area.  SUMF ¶ 50.   Ferrer did not work in the Human Resources division. SUMF ¶ 51.

The Human Resources division is a "very highly specialized" [sic] and requires employees working for this division to possess the academic preparation and knowledge in the Human Resources field (including employment rights, medical insurance, legal leaves and employment laws in general). SUMF ¶ 52. Plaintiff admitted she did not meet the requirements to work at the Human Resources Department. SUMF ¶ 53.

Once the first floor front desk position was eliminated, there was no other position Ferrer was qualified to perform.  Thus, BLDM asked her to scan and digitalize payroll documents until December of 2010.  Since this task required her to remove the staples before scanning the documents, Ferrer was not able to perform this task as removing staples was too strong for her.  However,  BLDM assigned someone to remove the staples so that Ferrer could scan the documents until her last day of work.  Because BLDM significantly reduced the number of employees in the previous years, it was very onerous for BLDM to have two employees performing the simple task of scanning documents. SUMF  ¶ 58[12]; see also, SUMF ¶¶ 31 and 32.

---

[12]The only portion that was adequately contested by Plaintiff was whether she requested to retire or not; which is completely irrelevant for purposes of BLDM's Motion for Summary Judgment as the court will explain below. The rest of the statement is unopposed as, once more, Plaintiff referred to 20 pages of her deposition transcript without pointing out a specific portion of those pages to support her opposition as mandated by Local Rule 56(e).

Contrary to the allegations in support of her Amended Complaint, Ferrer acknowledged that when she was called "mama" or " titi", it was "out of affection, never meant by anyone or taken by Plaintiff as lack of respect to her person and it did not bother her at all." SUMF ¶ 62.

By the end of 2009, Ferrer had a conversation with Eng. Longo about her retirement and she expressed her desire to continue working until the following year.[13] SUMF ¶ 10.

In July of 2010, Plaintiff was absent due to a gallbladder condition for more than one month and then from September 29 to November 6 for a hand surgery.  During said time, the position held by her at the first floor front desk was eliminated.  Thereafter, BLDM created the position of scanning documents to accommodate Ferrer.[14] SUMF ¶ 30.

Upon Plaintiff's return after the gallbladder incident, she had a meeting with Eng. Longo on September 1, 2010. SUMF ¶ 27.  Plaintiff Ferrer spoke with Eng. Longo about staying until December of 2010.[15] SUMF ¶ 29. Plaintiff returned to BLDM after the hand surgery in November of 2010.  SUMF ¶ 26.

---

[13]Plaintiff denies this fact asserting "she never spoke about retirement with anybody" and that "Defendants [sic] started insisting Plaintiff to leave the company." Again, Plaintiff makes reference to 20 pages (pages 23-43) of her deposition) without pointing out a specific portion of those pages to support her opposition, as mandated by Local Rule 56(e). Moreover, pages 23-24 cited by Plaintiff were not included as part of Exh. 2. Thus, this statement is deemed admitted.  Furthermore, because Plaintiff fails to meet two of the four elements of a *prima facie* case, this statement does not alter the court's conclusion.

[14]Plaintiff's explanation of statement number 30 does not contest this fact.

[15]Plaintiff does not dispute that she asked Longo if she could stay until December.  OSMF ¶ 28.  However, she asserts said request was made because "...defendant was insisting on her to leave the company." Notwithstanding, Plaintiff, as with many other statements, failed to adequately support this statement by a record citation as required by Local Rule 56(e). For example, Plaintiff makes reference to 26 pages of her deposition without pointing out a specific portion of those pages to support her opposition, as mandated by Local Rule 56(e). Moreover, pages 23-24 cited by Plaintiff were not included as part of Exh. 2. Thus, this statement is deemed admitted. It is not the court's job to glean the parties' positions and make and independent analysis of all the pages submitted by Plaintiff in support of her Opposition. This is "...exactly the sort of archeological dig that anti-ferret rules are designed to prevent." Puerto Rico American Ins.Co. v. Rivera-Vázquez, 603 F.3d 125, 131 (1st Cir. 2010) (reiterating also that Local Rule 56 is "aimed at enabling a district court to adjudicate a summary judgment motion without endless rummaging through a plethoric record.")

It is uncontested that a luncheon was held at the company on or around December 17, 2010 to celebrate Plaintiff's retirement.  Furthermore, BLDM's Christmas party and the corresponding homage to BLDM's longest tenured employees was dedicated to Ferrer.[16]

After Ferrer left the company, the task of scanning was not performed anymore as there was no need to scan said documents because the payroll was already generated in an electronic format. SUMF ¶ 35[17].

By August of 2012 (almost two (2) years after Ferrer's last day at BLDM), BLDM may have scanned some old payroll documents. However, said task has been performed once or twice. SUMF ¶ 36.  After 2012, there has been almost no scanning at all. SUMF ¶ 37.

Ferrer's last day at BLDM, December 22, 2010, was also the last working day for BLDM in 2010.  After said that, BLDM was closed for the Christmas season and reopened in January of 2011. SUMF ¶ 33.

Although the parties disagree on the purpose of the check, it is uncontested that on February of 2010, Plaintiff received, retained and deposited a $20,000.00 check from BLDM. SUMF ¶¶ 11-12.

## IV.  DISCUSSION

### A.      A.D.E.A.

The A.D.E.A. provides that it is unlawful for an employer to "refuse to hire or to discharge any individual or otherwise discriminate against [him] with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's

---

[16]Although Plaintiff denied USMF ¶ 65 alleging that she did not talk about retirement with anybody, did not want to retire and did not want to participate in these events, she did not contest that a luncheon and a homage were held.

[17]Plaintiff's explanation to deny this fact does not support said conclusion.

age." 29 U.S.C. § 623(a)(1).  A plaintiff asserting a claim under the A.D.E.A. has the burden of establishing "that age was the 'but-for' cause of the employer's adverse action." Acevedo-Parrilla v. Nobartis Ex-Lax, Inc., 696 F.3d 128, 138 (1st Cir. 2012) (quoting Gross v. FLB Fin. Servs., Inc., 557 U.S. 167, 177, 129 S.Ct. 2343, 174 L.Ed. 2d 119 (2009)).

A.D.E.A. plaintiffs rarely possess "smoking gun" evidence to prove their employers' discriminatory motivations. See , Vélez v. Thermo King de Puerto Rico, Inc., 585 F.3d 441 (1st Cir. 2009) (citing Arroyo-Audifred v. Verizon Wireless, Inc., 527 F.3d 215, 218-19 (1st Cir. 2008)). Thus, in the absence of direct evidence of age discrimination, courts evaluate A.D.E.A. claims under the three-stage burden-shifting framework instituted in McDonnell Douglas Corp., 411 U.S. 791, 802, 93 S.Ct. 1817, 36L.Ed.2d 668 (1973); Cameron v. Idearc Media Corp ., 685 F.3d 44, 48 (1st Cir. 2012).[18]

As relevant here, the first stage of the McDonnell Douglas framework requires a plaintiff to establish a *prima facie* case of employment discrimination. "In an A.D.E.A. action this requires a showing (1) that he or she was at least 40 years old at the time of discharge; (2) that he or she was qualified for the position but (3) was nevertheless fired [or suffered the adverse employment action]; and (4) the employer subsequently filled the position." Acevedo-Parrilla, 696 F.3d at 138 (citation and internal quotation marks omitted).

---

[18]Contrary to Plaintiff's allegations, the First Circuit Court of Appeals already clarified that, although in Gross the Supreme Court noted that it "'has not definitively decided whether the evidentiary framework of McDonnell Douglas Corp. v. Green, 411 U.S. 791, 93 S.Ct. 1817, 36L.Ed.2d 668 (1973), utilized in the Title VII cases is appropriate under the A.D.E.A context'. Gross, 129 S.Ct. at 2349 n.2, . . . [t]his Circuit has long applied the McDonnell Douglas framework to A.D.E.A. cases . . . [and] [u]ntil told otherwise by the Supreme Court, we shall continue to do so." Vélez, 527 F.3d at 447 n. 2 (citations and internal quotation marks omitted).

As the First Circuit Court of Appeals explained in Acevedo, 696 F.3d at 137-138, 144:

> Doing so gives rise to an inference that the employer discriminated due to plaintiff's advanced years. If the plaintiff is able to establish a *prima facie* case, the burden shifts in the second stage to the employer, who must then produce a legitimate, non-discriminatory reason for termination. If the employer is able to do this, the ball returns to the plaintiff's court, in which he must prove by a preponderance of the evidence that the defendant's alleged non-discriminatory reason was in fact a pretext for discrimination.
> ...
> An employer's disparate treatment of employees in response to behavior that legitimately offends the employe[e] can provide evidence of discriminatory animus. However, to successfully allege disparate treatment, a plaintiff must show that others similarly situated to him in all relevant respects were treated differently by the employer.

> Id. at 144.  (internal citations omitted) (quotation marks omitted).

Ultimately, the plaintiff's burden is to prove "that age was the 'but-for' cause of the employer's adverse action."  In sum, the ultimate question on summary judgment in this A.D.E.A. case is "whether or not the plaintiff has adduced minimally sufficient evidence to permit a reasonable factfinder to conclude that he was fired because of his age." Vélez, 585 F.3d at 452 (quoting Dávila v. Corporación de P.R. para la Difusión Pública, 498 F.3d 9, 16 (1st Cir. 2007).

Aida Ferrer-Ferrer v. Bermudez, Longo, Díaz-Masso, S.E., et al
Civil No. 11-1663 (CVR)
Opinion and Order
Page 15

### B.    Plaintiff's *Prima Facie* case[19]

In this case, there is not dispute that Plaintiff is a member of a protected class since she was 79 years old at times relevant to the complaint.

BLDM argues, however, that Plaintiff has failed to demonstrate that she was performing her duties in a satisfactory manner prior to her termination and, thus, she was not qualified for the position she held.   It contends, among other reasons[20], that Ferrer's continuous absences made her unfit to perform her duties.  For an employee to work with the Payroll department, it further asserts, he or she has to be consistently and continuously present at work. Furthermore, and because of the number of employees working for BLDM, the process of reviewing and verifying the payroll data took and still takes several days. In addition, the payroll must be processed with accuracy to avoid over or under paying the employees and to ensure that BLDM can seek the reimbursement of certain expenses from its customers. Thus, Ferrer's frequent and prolonged absences precluded her from working

---

[19]Plaintiff says she "elects" to present direct evidence of discrimination in support of her A.D.E.A. claim, and, therefore, she does not need to meet the *prima facie* case.  Plaintiff relies heavily on two main events: (i) BLDM's website and (ii) Eng. Longo's comment to her that "she had been long enough with the Company."  Having reviewed BLDM's website (Docket No. 54, Exh. 4), it is clear that Ferrer's argument is nothing but disingenuous.  The website merely states what happened three (3) years before Plaintiff left BLDM, which is that the founding fathers of BLDM retired and "left a younger generation of professionals in charge of the business."  Moreover, Plaintiff's allegation that somehow said wording is evidence of an ageist culture and that it could be construed as direct evidence of discrimination is incorrect. First, and as correctly stated by Defendants, it is very likely that when someone retires, she/he will be succeeded by a younger person and that, by itself, is not direct evidence of age discrimination. Second, the own text refers to "professionals" who are "in charge" of BLDM. Thus, it is clear it did not refer to employees in the same position as Plaintiff (who continued working at BLDM years after 2007).  More importantly, the copy of the website submitted in support of this argument is dated July 22, 2013; that is, 3 years after Plaintiff ceased working for BLDM.  Thus, it does not constitute direct evidence of discrimination.  Plaintiff's reference to Mr. Longo's comment is also ill-founded, as Plaintiff herself admitted during her deposition that said comment was not "age related" but that responded to a previous conversation Longo had with Plaintiff. See, Docket No. 43, Exh. 7, p. 48:7-20, p. 49:1-15 and p. 63:14-21).  Even if it was an age related comment (which is not) an isolated comment is not direct evidence of age discrimination. See e.g. Mulero-Rodríguez v. Ponte, 98 F.3d 670, 673 (1st Cir. 1996)(citing Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 96 (1st Cir. 1996); see also, Álvarez v. Shinseki, __ F.Supp.2d __, 2013 WL 1446157 (D.P.R. 2013)(holding that direct evidence of discrimination does not include stray remarks in the workplace environment).  Therefore, this Court will evaluate Plaintiff's A.D.E.A. claim under the three-stage burden-shifting framework of McDonnell Douglas Corp.

[20]In light of this court's conclusion and the uncontested facts in this case, it is unnecessary to discuss each and every reason provided by BLDM in support of Ferrer's unsatisfactory performance.

the payroll. Had Ferrer continued working in the payroll, it would have caused an extreme disruption to BLDM's operations; particularly considering the reduction in the number of employees in both Payroll and Human Resources divisions which resulted in the cross-utilization of employees. Ferrer, however, did not meet these requirements because she was consistently absent from work.

Surprisingly, Plaintiff briefly alleges she did not have an absenteeism problem and that her medical leaves of absence were for medical reasons and accommodated by the employer. (Docket No. 54, pp. 20-21). In support of her contention, Plaintiff cites to her deposition testimony regarding one particular health issue. (Docket No. 54, Exh. 3, p. 12). Said testimony, however, does not contest that (I) Plaintiff admitted not all absences were charged to legal leave; (ii) she exhausted all leaves under state and federal laws; (iii) because of her attendance and punctuality problems, she was given an "inadequate" mark (the lowest rate that can be given to an employee) in her performance evaluation; (iv) she exceeded by 152 days what was considered by BLDM as acceptable in 2009 (had a total of 161 absences); and (v) was absent for 81 days in 2010.

Taking all these uncontested facts into consideration, it would be hard to conclude that sufficient attendance is anything other than a reasonable job requirement. Given Plaintiff's absenteeism record, it is clear she could not fulfill her responsibilities consistent with BLDM's expectations. It is obvious that "[o]ne of the most fundamental requirements of any position is reporting for work." Rossell v. Kelliher 468 F.Supp. 2d 39, 45 (D.C. 2006)(quoting Carr v. Reno, 23 F.3d 525, 530 (D.C. Cir. 1994) ("We agree with the proposition that an essential function of any government job is an ability to appear for work ... and to complete assigned tasks within a reasonable period of time" and finding that

plaintiff's "prolonged, frequent and unpredictable absences render her unqualified for any government job"); see also, Sampson v. Citibank, 53 F.Supp.2d 13, 18 (D.D.C.1999) (holding that an employee who cannot meet the attendance requirements of the job is not a "qualified individual" under the Americans with Disabilities Act); Walders v. Garrett, 765 F.Supp. 303, 309-10 (E.D.Va.1991), aff'd, 956 F.2d 1163 (4th Cir. 1992) ("Few would dispute that, in general, employees cannot perform their jobs successfully without meeting some threshold of both attendance and regularity. The weight of authority supports this commonsense conclusion.").

Furthermore, the Second Circuit Court of Appeals has repeatedly and correctly cited to excessive absenteeism as evidence of lack of satisfactory job performance. See e.g., Dugan v. Martin Marietta Aerospace, 760 F.2d 397, 400 (2nd Cir. 1985) (A.D.E.A. claim) and Santana v. U.S. Tsubaki, Inc., 932 F.Supp. 189, 191 (N.D. Ohio 1995); see also, Hendricks v. National Cleaning Contractors, Inc., 1998 WL 26188 (S.D.N.Y.).[21]

Although this conclusion could end the Court's analysis, it is important to address Plaintiff's general assertion regarding the third prong, that is, whether she was fired or did she voluntarily retire.  In Plaintiff's opinion "[t]his controversy by itself bars summary judgment." (Docket No. 54, p. 1).  Plaintiff is wrong for a simple reason: even if this court considers Plaintiff's version of the facts (that is, that she was terminated by BLDM), it is clear that she fails to meet two (2) of the four (4) prongs required for a *prima facie* case

---

[21]Moreover, even if Plaintiff could partially perform her duties with BLDM's accommodations in place, it is uncontested that such accommodations would have been unduly burdensome to BLDM and were thus unreasonable in the aggregate.

under A.D.E.A. In other words, even if this court would concede that Plaintiff was, in fact, terminated, is an undisputed fact that she was not performing her duties because she was consistently absent from work and that she was not replaced by a younger employee.

As to the fourth prong, the uncontested facts in this case confirm that Hernández did not overtake Ferrer's position as she did not perform any additional task as a result of Plaintiff's "termination"[22] in December of 2010.  In is uncontested that Hernández' duties were exactly the same since she started working at BLDM with the caveat that supervisory duties were assigned to her after being promoted.  Moreover, Ferrer admitted that, even before she was moved to the first floor front desk position, Hernández was performing the same duties. In fact, the only task performed by Ferrer before the transfer to the first floor desk that Hernández did not perform was making certifications.

Once more, Plaintiff's sole paragraph addressing this prong on page 20 of her opposition and the corresponding documents in support of her argument do not contest these facts.[23] (Docket No.  54). In fact, the record is barren of evidence competent to support Plaintiff's contention. Plaintiff is reminded that, for purposes of fourth prong, "[a] discharged employee 'is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other

---

[22]See previous discussion regarding Plaintiff's alleged termination.

[23]A review of the pages 27 and 28 of BLDM's Rule 30(b)(6) deposition cited by Plaintiff to support her contention that after she was "terminated" her duties are being performed by Rivera, Lara, Parrilla and Valentín does not support said conclusion. For example, page 27 only supports that Rivera is in her thirties, Parrilla is approximately 49 years old, Valentín is approximately 32 years old. Nothing more. Page 28 of said deposition does not support Plaintiff's conclusion either.

existing employees already performing related work.'" LeBlanc v. Freat American Ins. Co.,

6 F.3d 836, 486 (1st Cir. 1993) (quoting, Barnes v. GenCorp. Inc., 896 F.2d 1457, 1465 (6th

Cir. 1990)).

Based on the foregoing, Plaintiff has failed to establish a *prima facie* case of age

discrimination.

### C.   BLDM's legitimate non-discriminatory reason for termination.

Although this court already concluded that Plaintiff failed to present a *prima facie*

case of age discrimination, it is clear that BLDM has articulated a legitimate, non

discriminatory reason for her termination based, among other reasons, on her excessive

absenteeism.  The First Circuit Court of Appeals has held that poor performance is a

legitimate reason for adverse employment action.  See Cameron v. Idearc Media Corp., 685

F.3d 44, 48 (1st Cir. 2012) ("poor performance in a job is a conventional business motive"

for termination, "not age discrimination. . .") .

In addition, as the Court acknowledged in Alvarez v. Shinseki, ___ F. Supp. 2d ___,

2013 WL 1446157, *6 (D.P.R.):

> [t]he case of Dávila v. Corporación de Puerto Rico Para La Difusión Pública
> instructs the court on balancing meritorious age discrimination claims
> against merely unwise or unfair employment decisions. 498 F.3d 9, 16-18 (1st
> Cir. 2007). The First Circuit considered an ADEA claim in which the plaintiff
> "trie[d] to discredit his negative performance evaluations," and "cite[d] office
> gossip as a basis for concluding that the [employer] wanted to get rid of him
> because of his age." Id. at 16. The employee claimed that the evaluating
> employer misrepresented the results of his performance and "was unqualified
> to compile reviews." Id. The reviewing court found, "These allegations, even
> if true, would indicate no more than that the [adverse employment action]
> was unfair or unwise; they would not indicate age discrimination." Id. The

court reaffirmed the axiomatic principle[24] that, "as long as [the employer] believed that the [employee's] performance was not up to snuff—and the [employee] has presented no evidence suggesting that management thought otherwise—it is not our province to second-guess a decision to fire him as a poor performer." Id. at 17.

Thus, there is no genuine issue that Defendant gave a non-discriminatory reason for "terminating" Plaintiff and, therefore, met its burden in response.

Finally, "[a]lthough the summary judgment standard requires that evidence of record be viewed in the light most favorable to the nonmoving party, it does not require that all bald assertions, opinions, or even genuinely held beliefs asserted by the nonmoving party be adopted wholeheartedly by a court." Díaz v. Mitchell's Salon and Day Spa, Inc., 2011 WL 379097, at *7 (S.D. Ohio 2011). We need go no further.

In view of the foregoing, Plaintiff's claims under the A.D.E.A. are **DISMISSED WITH PREJUDICE**.

### D.     Plaintiff's Supplemental State Law Claims

Because the Court has dismissed all claims over which it exercised original jurisdiction, it declines to exercise supplemental jurisdiction over plaintiff Ferrer's Commonwealth claims. Accordingly, plaintiff Ferrer's state law claims are **DISMISSED WITHOUT PREJUDICE** pursuant to 28 U.S.C. § 1367(c)(3). See Rivera v. Murphy, 979

---

[24] The First Circuit has "consistently stated that mere questions regarding the employer's business judgment are insufficient to raise a triable issue as to pretext." Acevedo-Parrilla, 696 F.3d at 140 (citing Webber v. Int'l Paper Co., 417 F.3d 229, 238 (1st Cir. 2005)). "More than a simple disagreement with the correctness of [Defendant's] decisions," such as "evidence sufficient to raise an issue of fact as to whether [Defendant] ... truly believed [Plaintiff's] performance was unsatisfactory," merits denial of summary judgment. Acevedo-Parrilla, 696 F.3d at 140. Whether an employer's perceptions are accurate or not, "so long as they are not discriminatory it is beyond the province of the court to act as a 'super personnel department[ ],' second-guessing the process by which the decisionmaker has arrived at her conclusion...." Bonefont-Igaravidez, 659 F.3d at 126 (quoting Bennett v. Saint-Gobain Corp., 507 F.3d 23, 32 (1st Cir. 2007)). Furthermore, "poor performance in a job is a conventional business motive" for termination, "not age discrimination...." Cameron, 685 F.3d at 48.

F.2d 259, 264 (1st Cir. 1992) (quoting Cullen v. Mattaliano, 690 F.Supp. 93 (D.Mass. 1988)

("[I]t is the settled rule in this Circuit that in a non-diversity case, where pendent state

claims are joined with a federal cause of action and that the federal cause of action is

[dismissed] ... the pendent state claims should be dismissed.")).

## V.   CONCLUSION

In view of the foregoing, BLDM's Motion for Summary Judgment (Docket No. 43)

is **GRANTED.** Plaintiff's claims under the A.D.E.A. are **DISMISSED WITH**

**PREJUDICE**. Plaintiff's supplemental state law claims are **DISMISSED WITHOUT**

**PREJUDICE**. Judgment shall be entered accordingly.

**IT IS SO ORDERED**.

In San Juan, Puerto Rico, this 24th day of September of 2013.

s/CAMILLE L. VELEZ-RIVE
CAMILLE L. VELEZ-RIVE
UNITED STATES MAGISTRATE JUDGE